PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA A. WINGERTER, | ) | |
| | ) | CASE NO. 5:13CV0756 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| RBS CITIZENS NATIONAL | ) | |
| ASSOCIATION, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 6] |

Pending is Defendant RBS Citizens National Association's Motion for Judgment on the Pleadings. ECF No. 6. Defendant moves pursuant to Federal Rule of Civil Procedure 12(c), asking the Court to dismiss Plaintiff Cynthia A. Wingerter's Complaint in its entirety. The Court has reviewed the motion, responsive briefs and the applicable law. For the reasons provided below, Defendant's motion is denied in part and granted in part.

**I. Procedural and Factual Background**

This action was filed in the Stark County, Ohio Court of Common Pleas on March 8, 2013, based on claims of promissory estoppel and forced defamation. ECF No. 1-1. Defendant removed the case to this Court on April 5, 2013, on the basis of diversity of citizenship jurisdiction. ECF No. 1. The allegations, which the Court takes as true for the purposes of this motion, are set forth below.

Plaintiff was employed as a branch manager at one of Defendant's Charter One Bank locations. ECF No. 1-1 at ¶ 4. Plaintiff was an "at-will" employee. ECF No. 4-1 at PageID #:

(5:13CV0756)

33. In the first quarter of 2012, Plaintiff discovered that her branch was receiving questionable credits for business accounts that were opened by a business banking officer. ECF No. 1-1 at ¶ 7. The calculation of her bonus was partly determined by these credits.[1] Id. at ¶ 39. When Plaintiff learned of these credits, she immediately notified her direct supervisor, Danielle Burrrows Mire. Id. at ¶¶ 11, 40. The supervisor told Plaintiff that she was entitled to the credits and that proper procedure had been followed. Id. at ¶ 41. Plaintiff, again, questioned her supervisor about the credits when they appeared on the monthly reports for the second quarter of 2012 and was, again, assured by Mire that the credits were appropriately attributed to her. Id. at ¶¶ 14-16. After the second quarter of 2012, the branch no longer received these credits. Id. at ¶ 20.

In the Summer of 2012, Mire left the employment of Defendant. Id. at ¶ 22. In November, 2012, the replacement supervisor, Robert Lieb, asked Plaintiff why she was having less success after doing so well opening accounts in early 2012. Id. at ¶ 23. Plaintiff informed Lieb that the early 2012 accounts had been opened by a business banker and that Mire had assured her that proper procedure had been followed. Id. at ¶¶ 24-25. On December 11, 2012, Defendant terminated Plaintiff because she violated company policy and code of ethics when she knowingly accepted an improper bonus. Id. at ¶¶ 6, 29, 50.

As a result of her termination, Plaintiff filed the underlying action. In Count One, Plaintiff asserts a claim of promissory estoppel, alleging that her supervisor's assurances that the credits were proper amounted to a promise that the credits were proper, and that promise was

---

[1] Under the company's incentive program, Plaintiff received a bonus based on credits that her branch received. Id. at ¶ 10.

(5:13CV0756)

breached when Defendant terminated Plaintiff for receiving the bonus resulting from the credits. *Id.* at ¶¶ 41-46. Plaintiff's second claim is based on the doctrine of "forced defamation." *Id.* at ¶¶ 49-58. Plaintiff alleges that, if the termination remains in effect, she will be forced to inform prospective employers that she was discharged by her prior employer for receiving improper bonuses and violating the company code of ethics. *Id.* at ¶¶ 52-23.

On April 11, 2013, Defendant moved for judgment on the pleadings with respect to Counts One and Two. ECF No. 6. Defendant argues that: (1) the promissory estoppel claim should fail because Plaintiff has not alleged, as an exception to her "at-will" employment," that she was promised continued employment; and (2) the defamation claim should fail because "forced defamation" is not recognized under Ohio law and Plaintiff has not alleged that any publication has occurred. ECF Nos. 6-1 and 9.

## II. Standard of Review

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). The Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). A motion

3

(5:13CV0756)

brought pursuant to Rule 12(c) is appropriately granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

### III.  Discussion

**A.  Count One - Promissory Estoppel Claim**

In Count One, Plaintiff alleges that Defendant breached the promises made by Mire, Plaintiff's supervisor when the credits accrued, when it terminated Plaintiff as a result of the questionable credits. ECF No. 1-1 at ¶ 46. Plaintiff alleges that she was assured by Mire that she was entitled to the credits and that proper procedure had been followed. *Id.* at ¶ 41. Plaintiff also alleges that, relying on Mire's assurances, she took no further action in determinating the legitimacy of the credits. *Id.* at ¶ 44. Defendant argues that because Plaintiff failed to allege that she had been promised continued employment she remained an "at-will" employee whom can be terminated at any time and for any reason. ECF Nos. 6-1 at PageID #: 42 and 9 at PageID #: 101.

Ohio law recognizes "a promissory estoppel exception to an employer's unfettered right to discharge an at-will employee." *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St. 3d 108, 110, 570 N.E.2d 1095, 1097 (1991). Promissory estoppel has been defined as "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Hortman v. Miamisburg*, 110 Ohio St. 3d 194, 199, 852 N.E.2d 716, 720 (2006) (quoting Restatement (Second) of Contracts, § 90). "In order

4

(5:13CV0756)

to prevail on a claim of promissory estoppel, [plaintiff] must show a clear and unambiguous promise and reliance by the party to whom the promise is made.  The reliance must be reasonable and foreseeable, and the party relying on the promise must have been injured by the reliance." *HAD Ents. v. Galloway*, 192 Ohio App. 3d 133, 144, 948 N.E.2d 473, 481 (4th Dist. 2011).

When viewed in the light most favorable to Plaintiff, drawing all reasonable inferences in her favor, Plaintiff has sufficiently established a promissory estoppel claim.  Plaintiff was told by her then supervisor–Mire–that she was entitled to the credits and that proper procedure had been followed.  ECF No. 1-1 at ¶¶ 12, 16, 41.  These assurances may be reasonably construed as a promise that Plaintiff would not be terminated for accepting a bonus resulting from the credits.

The court in *Nott v. Woodstock Care Ctr., Inc.*, No. C-3-99-133, 2001 WL 1135057 (S.D. Ohio Mar. 21, 2001) reached a similar conclusion.  In *Nott*, the employee was terminated because of her weak arm after having been assured by a regional administrator, "[w]e know about your arm.  We've known about your arm. . . .  It's not an issue now nor will it ever be." *Id.* at *13. On a motion for summary judgment, the court found that the employee had sufficiently established a claim of promissory estoppel because the employer's "statement reasonably may be construed as a promise that [the employer] would not terminate [the employee] due to her arm weakness." *Id.*  Here, a rational jury could find the supervisor's assurance that the credits were proper and that Plaintiff was entitled to the credits as a clear and unambiguous promise that Plaintiff would not be terminated for receiving the bonus resulting from the credits.

5

(5:13CV0756)

### B. Count Two - Forced Defamation Claim

In Count Two, Plaintiff raises a claim of "forced defamation," alleging that, because her job prospects lie in positions of trust and authority, she will be forced to disclose to prospective employers the reason for her termination by Defendant. ECF No. 1-1 at ¶¶ 52-54. This claim fails for two reasons. First, under Ohio law, "*possible* publication to a potential future employer [does] not constitute publication to a third party in the context of a defamation claim." *Shock v. St. Rita's Med. Ctr.*, No. 3:12-CV-1240, 2012 WL 5354571, at *7 (N.D. Ohio Oct. 29, 2012) (emphasis added) (citing *Potter v. RETS Tech Ctr. Co., Inc.*, Nos. 22012, 22014, 2008 WL 615423, at *6 (Ohio App. 2d Dist. Mar. 7, 2008)); *see also Miller v. City of Columbus*, 52 F. App'x 672, 674 (6th Cir. 2002) (affirming the District Court's dismissal of plaintiff's defamation claim because "[a]lthough the complaint appears to attempt to allege claims of defamation, it contains no allegations which identify any specific defamatory utterance or publication, or the speaker, author, or recipients thereof."); *Parry v. Mohawk Motors*, 236 F.3d 299, 313 (6th Cir. 2000) ("Plaintiff cannot point to any facts demonstrating that any prospective employer stated that Plaintiff tested positive for drugs or otherwise made or were told false statements regarding Plaintiff's test. . . . Therefore, Plaintiff cannot sustain a defamation claim."). Plaintiff has failed to allege actual publication of any defamatory statement to a third party.

Second, "[t]he doctrine of 'forced republication' has not been recognized under Ohio law." *Schacht v. Ameritrust Co. N.A.*, No. 64782, 1994 WL 86229, at *3 n.3 (Ohio App. 8th Dist. Mar. 17, 1994); see *Shock*, 2012 WL 5354571, at *8 ("No Ohio court . . . has yet embraced the idea that an alleged victim of defamation can satisfy the publication element of the tort by

6

(5:13CV0756)

publishing it himself, i.e. to prospective employers.") (citing *Guy v. McCartney*, No. 00JE7, 2002 WL 1376235, at \*6 (Ohio App. 7th Dist. June 3, 2002)). Notably, in 2002, the Supreme Court of Ohio declined to answer the certified question of whether "forced defamation" satisfies the publication element under Ohio law. *Golem v. Put-In-Bay*, 94 Ohio St. 3d 1426, 761 N.E.2d 43 (2002). This Court declines the opportunity to define a State law offense when the highest court of the State has refused to do so.

### IV. Conclusion

Accordingly, Defendant's Motion for Judgment on the Pleadings (ECF No. 6) is denied with respect to Count One and granted with respect to Count Two.

IT IS SO ORDERED.

| | |
|---|---|
| June 19, 2013 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |